## JAMES HOWERTON v. J. J. HOLT.

An assignment to secure a particular creditor, whereby it is stipulated, that the assignee shall dispose of the property assigned, and after discharging his debt, return the surplus, if any, to the assignor, may be regarded as a trust in the nature of a mortgage, with some of the qualities of an assignment. The absence of proof that the assignor was pressed, except for a single debt, or that he was insolvent, or in failing circumstances, or that the property assigned was the whole, or even the larger part, of his estate, are matters to be noticed in determining the character of the instrument.

Such assignee does not acquire the entire legal and equitable interest in the property conveyed, subject to the trust, but a specific lien upon it; and whether the surplus results to the assignee by express provision in the deed, or by implication, is immaterial. The residuary interest of the assignor may,

according to its nature, or that of the property, be reached by an execution, or a bill in equity.

Where A. made an assignment to B., an attorney, to secure the payment of a a note which had been transferred to him for collection : *Held*, that the jury were correctly instructed; that if the motive that induced A. to make the assignment, was to hinder and delay his creditors, the deed would be void as to creditors, although A. may have acted in good faith, and without fraud on his part.

As the evidence justified the charge, the court should, when requested, have instructed the jury, that if they believed from the evidence, the goods assigned were never delivered to the plaintiff, (the assignee,) they must find for the defendant. (By the assignment, the goods purport to have been delivered at the time of its execution.)

Possession by the assignor, where the deed is absolute, is generally held to be *primâ facie* evidence of fraud, which, if not explained, makes the deed void as to creditors. And the use of property, not consistent with the objects of the deed, increases the force of the presumption.

An assignment of a much larger amount of property than is necessary to pay the debt, as also the fact of there being, at the time of the assignment, a judgment creditor, are badges of fraud, and are admissible in evidence, as tending, in connection with other facts, to establish it.

The court may properly decline to instruct the jury, that particular facts are badges of fraud, without reference to their being subject to explanation, if there were circumstances tending, in some degree, to rebut the presumption arising from them. Such charge might mislead the jury, unless sufficiently explained in the same connection.

The court is not permitted to charge upon the weight of evidence; it may explain to the jury the reasons upon which it is admitted, and that particular facts tend to raise, or repel certain presumptions, but the force of their tendency to do so, must be left to be weighed by the jury.

Courts cannot be expected, in all cases, to explain, in detail, to the jury, the purpose for which every piece of testimony has been admitted; but in cases of fraud, where the main issue is, usually, the intent with which the deed is made, something more than giving in substance a copy of the statute of frauds, will often be necessary, to enable a jury to determine a case in accordance with the principles which have governed chancellors, in adjudicating the facts connected with assignments.

Where circumstances are proved, tending strongly to show that an assignment is fraudulent, and they are not explained, a verdict sustaining the assignment should be set aside by the court.

In a suit for damages by the assignee, against a sheriff who had sold the goods assigned, by virtue of an execution against the assignor, it appearing that the money realized from the sale, had been applied by the sheriff in satisfaction of the execution : *Held*, that the assignor was not a competent witness for the assignee. Such case is not analogous to that of the trial of the right of

property between a plaintiff in execution and the vendee of the property, claiming by warranty title from the defendant in the execution.

APPEAL from Calhoun. Tried below before the Hon. Fielding Jones.

This was a suit by the appellee against the appellant for damages sustained by reason of the sale of a negro woman and child, alleged to be his property, which were levied upon and sold by the appellant, as sheriff, in virtue of an execution in favor of Burnside & Co., against John Hudnall, on a judgment recovered by them in the District Court of Calhoun county, on the 26th of September, 1855.

On the 28th of September, 1855, Hudnall made an assignment to the appellee, including in the deed his entire stock of merchandise, variously estimated by the witnesses at from $7000 to $15,000, together with all his book accounts, notes, &c., inventoried at $8750. There was no schedule of the stock of goods, attached to the assignment, but reference was made to the books, for a description of the various articles composing the stock on hand. The alleged object of the assignment was to secure the payment of Hudnall's indebtedness to Henry Sheldon, amounting at that time to about $7600, principal and interest, upon a promissory note, which had been transferred by Sheldon to the appellee for collection. By the deed, the appellee was authorized to take possession of the property, make sales and collections, and apply the proceeds to the payment of Sheldon's debt; after the discharge of which, and of the expenses of executing the trust, the surplus of the property was to be returned to the assignor.

Upon the trial, the appellee introduced as a witness the assignor, (Hudnall,) whose testimony was objected to by the appellant, upon the ground of interest, and because he was a participant in the alleged fraud; these objections were overruled by the court, and the witness was permitted to testify in the cause; to which appellant excepted.

Hudnall then testified that he was appointed by the appellee,

his attorney in fact, to retain and sell the goods, and to collect and settle the debts included in the assignment; he also produced a mutilated instrument, (the signature of the appellee, and, apparently, a part of the instrument also, being torn off,) which, he said, was the power of attorney that had been executed to him by the appellee, who was an attorney, and was forced to leave home to attend the courts a day or two after the execution of the assignment. Among the debts assigned was one against Bateman for $982.23, in payment of which, after the appellee had left home, the witness said, he took from Bateman a negro man; and afterwards traded the man for the woman and child levied upon and sold by the appellant; these negroes remained in the witness's possession, but the bills of sale were taken to the appellee. At the time the levy was made, (which was before the appellee's return home from the circuit,) the witness informed the appellant, that the negroes belonged to the appellee. After his return home, the appellee also gave the appellant notice, that the negroes belonged to him, and if they were sold, that he would hold him (the appellant) liable for their value. The witness Hudnall, also testified that he received a letter from ————, residing in Lockhart, requesting him to purchase these negroes for the writer; that he placed this letter in the hands of Parrish, who bid the negroes off on the day of sale; and that he gave Parrish the money (it having been put in his hands by said ———— for the purpose of purchasing the negroes) bid by him; that Parrish paid it to the sheriff (the appellant;) and that he, witness, received the negroes, and sent them to Lockhart, to the person for whom they were purchased.

C. C. Howerton, a witness for the appellant, testified that he, as deputy sheriff, levied the execution of Burnside & Co. on the negro woman and child, who, at the time of the levy, were in the possession of Hudnall, the defendant in the execution; that they were purchased by Parrish, and taken away by Hudnall. That subsequently to the levy, and before the sale, Hudnall said he must try and make some arrangement to relieve the negroes. That witness was selling at sheriff's sale, under attachment, a

lot of goods in Lavaca, and during the continuance of this sale, Hudnall applied to him to sell a lot of tobacco and other things, the proceeds to be applied to the execution of Burnside & Co. Witness doubted whether he could sell without advertising, and feared that he would subject himself to the payment of auctioneer's license if he did.  Hudnall insisted on the sale, and witness asked the appellee, whether he could sell property without first advertising it.  The appellee advised him that he could; that the advertisement was for the benefit of the defendant in the execution, and that, if he waived it, it was all right; witness then sold the goods, and kept the money to be applied to the satisfaction of the Burnside execution.  That on the sale of the negroes, Hudnall, failing to make arrangements to relieve them, insisted upon having the money from the first sale, it being informal, but witness refused, and after the sale of the negroes, satisfied the balance due on the execution out of the first sale.  The tobacco, &c., was taken out of the warehouse of Hudnall.  Witness knew the store occupied by Hudnall before and after the time of the levy; the goods and merchandise therein were being sold, as usual, under the management of Hudnall; his sign was over the door, and the store was in his possession.

The appellant also offered in evidence the record and papers of a suit in the District Court of Calhoun county, by the appellee, for the use of Sheldon, against Hudnall, upon the note to secure the payment of which the assignment purported to have been made.  The petition in that cause was filed on the 26th of February, 1856, and alleged that no payments had been made upon the said note, except as follows, to wit: November 15th, 1855, $255.69; January 18th, 1856, $270.91; February 17th, 1856, $400; making the sum of $926.70, for which credit was given upon the said note.  Hudnall accepted service, and waived a copy of citation and petition; and at the Spring Term, 1856, of said court, there was a judgment by default in favor of the plaintiff in the cause for the sum of $6852.92.  At a subsequent day of the term, Hudnall made an application to set aside this judgment, supported by his affidavit, in which he stated that on

the 28th of September, 1855, he executed to the plaintiff in that suit, the assignment previously described; and that in the month of August or September, 1855, he sold and conveyed by a bill of sale, a negro boy, named Alfred, aged about 22 years, and valued at $1200, to the said plaintiff, (the appellee,) for the use of the said Sheldon, in further satisfaction of the said debt. Several other credits were set out in the affidavit, which the affiant alleged should have been allowed him upon the said note, (but they appeared to have been the same for which the credits were given in the petition.) It was further stated, that the said plaintiff had promised to credit the said note with the estimated value of the said negro boy, and also with the other sums received by him, amounting to about the further sum of $1000; but as he (the affiant) was informed, the said plaintiff had taken judgment against him for the full amount of the said note.

The record of this case did not show the action of the court upon this application; but J. C. Rowan, a witness for the appellant, testified that he was the attorney of Hudnall in the said cause, and that Hudnall in a motion to set aside the judgment by default, asserted a claim to a credit for a negro or negroes; that the motion was resisted, and that he understood the appellee, in argument, to say, that the negro had been sold; he, Hudnall, having traded one off for another, without any special authority from him, and consequently, Hudnall was entitled to no such credit; but his (witness's) recollection was not distinct, and he did not speak positively. The other facts are stated in the opinion.

*Sherwood & Goddard,* for the appellant.—1. An assignment made for the benefit of a single creditor, and conveying an amount of property (not scheduled) so palpably disproportioned to the amount to be secured, and stipulating that the surplus should be returned to Hudnall, *was clearly void on its face as to the other creditors,* and the jury should have been so instructed by the court. (Goodrich v. Downs, 6 Hill, (N. Y.) 438; Barney v. Griffin, 2 Comstock, 365; Leitch v. Hollister, 4

Comstock, 211; Mackie v. Cairns, 5 Cowen, 547; Strong v. Skinner, 4 Barb. S. C. 546; Dana, Adm'r, v. Lull, 17 Vermont, 390; Harris v. Sumner, 2 Pick. 129; Burrill on Assignments, 168, *et seq.*; Wright v. Linn, 16 Texas Rep. 42.) The presumption is that *all* of Hudnall's property was included in the assignment, and the court will not "intend" the contrary. (17 Vermont, 396.) As a partial assignment, the deed is avoided by the reservation of the surplus to the assignor. (Burrill on Assignments, 165, 225, and cases cited.)

2. This view of the assignment is clearly sustained by the evidence of the contemporaneous and subsequent conduct of the parties. The property assigned never went into the assignee's possession. The assignor retained the possession and entire control of it, conducted the business in his own name, precisely as before, and even exercised the right of absolute ownership, with the assignee's knowledge and assent. Hudnall insisted upon the sale of some of these very goods, taken from his store, for the satisfaction, in part, of Burnside & Co.'s judgment, and that, too, with the knowledge and advice of Holt.

In Linn v. Wright, 18 Texas Rep. 336, this court said : "Unquestionably the assignor, remaining in possession of the goods to dispose of them as an agent for the trustee, must be deemed, *primâ facie*, at least, to have conducted himself, in his dealing with them, in accordance with the understanding between himself and his principal."

In the present case, we are not left to a presumption; for we have the positive proof of the trustee's knowledge of the disposition of the trust-property by the assignor in possession, in a manner that shows the assignment to have been for the benefit of the assignor. (See also Smith v. Leavitts, 10 Ala. 92; and Wright v. Linn, 16 Texas Rep. 42.) The record also shows that, as between Holt and Hudnall, the former did not recognize the bill of sale, as vesting in him the title to the negroes—that is, as a payment or appropriation in favor of Sheldon; for Holt did not credit Hudnall with the value of the negroes.

It is clear from all the facts of this case, that the assignment

was intended by Hudnall to screen his property from Burnside & Co.'s execution, and at the same time to allow him the full control of it, for his own purposes and benefit. The making of the assignment just two days after the rendition of the judgment; the amount of property assigned; the possession remaining with the assignor; and his disposition of the property for his own benefit, in a manner conflicting with the avowed objects of the assignment; were all badges of fraud, and the jury should have been so instructed, in accordance with the charges asked by the defendant. (Butler v. Stoddard, 7 Paige, 165; Williams & Battle v. Jones, 2 Ala. 314; Burrill on Assignments, 400; Smith v. Leavitts, 10 Ala. 92; Linn v. Wright, 18 Texas Rep. 317; Wright v. Linn, 16 Id. 43.)

Had the jury been clearly and affirmatively instructed by the court, respecting the presumptions of law arising on the face of the assignment, and from attendant circumstances such as those proved in this case; had they been charged, that such an assignment is void on its face, as to creditors; their verdict could not have been, as it now is, contrary to the law and the evidence; they must have found for the defendant.

ROBERTS, J.—This is a case of special assignment of all the goods, accounts, and notes of a mercantile establishment, to pay a particular creditor, with a reservation of the balance, if any, to be returned to the debtor. Holt is nominally the creditor; though really a trustee for the benefit of the particular creditor; the note having been assigned to him for collection, and judgment thereon having been obtained in the name of Holt for the use of Henry Sheldon. The sheriff, Howerton, levied upon and sold a negro woman and child, in the possession of Hudnall, the assignor, that had been traded for in the collection of the debts of the establishment assigned. Holt notified the sheriff of his claim to the negroes, and brought this suit to recover their value. The sheriff set up in defence, that the assignment was fraudulent as to creditors; and that, therefore, the negroes were subject to the execution of Burnside & Co., under which he had

sold them as Hudnall's property. Upon the trial, a verdict and judgment were obtained against the sheriff, for the amount, for which the negroes sold, with interest.

As a means of determining the character of this assignment, it is proper to notice : 1st, That it was not shown, that Hudnall was being pressed by any debts, except that of Burnside & Co., or that he was insolvent, or in failing circumstances : 2d. It is not shown, that the property assigned was the whole, or even the larger portion, of his estate. It stands on the ground then, of special assignment, in trust for the security and payment of a particular creditor, and may be regarded as a trust in the nature of a mortgage, with some of the qualities of an assignment ; inasmuch as it not only secures the debt, but also makes provision for its payment, by a disposition of the property, by which it is secured, and an appropriation of its proceeds to its discharge.

Such an instrument is a valid conveyance, when not tainted with a fraudulent intent. In Leitch v. Hollister, there was a special assignment of a particular thing, directly to certain creditors, without the intervention of a trustee, with a reservation of any balance that might remain ; and the court said : " The conveyance, whatever may be its form, is in effect a mortgage of the property transferred. A trust as to the surplus results from the nature of the security, and is not the object, or one of the objects of the assignment. Whether in the instrument, or left to implication, is immaterial. The assignee does not acquire the entire legal and equitable interest in the property conveyed, subject to the trust ; but a specific lien upon it. The residuary interest of the assignor may, according to its nature, or that of the property, be reached by execution, or by bill in equity." (4 Comstock, 216.)

There was no effort, in this case, to subject the residuary interest ; but a direct attack upon the assignment, as fraudulent, as to creditors, because it was fraudulently made, with intent to hinder and delay them.

The charge of the court, as far as it went, was correct. The

defendant asked the court to charge the jury, that if they believed from the evidence that Hudnall never delivered the goods assigned to Holt, they must find for the defendant.

The evidence justified this charge. It was shown that there was no visible change in the possession or control of the mercantile establishment; that Hudnall remained in possession, disposing of the goods and collecting the debts, as before the assignment. Nor was it shown, that Holt ever took charge of them, even formally, or that he exercised any supervision over the acts of Hudnall, or any one else concerned in the management of the effects. Hudnall's sign was not removed, nor does it appear that anything was done, except recording the deed, calculated to give notoriety to the change of possession. As tending to show that Holt did take possession of the goods, a mutilated power of attorney was produced by Hudnall, who was sworn as a witness for Holt, which was stated by him to have been executed by Holt, authorizing him to sell the goods, collect the debts, &c. The paper was partly destroyed, so that Holt's name did not appear upon it, nor was there any explanation of how much more it contained, or by what means it became mutilated. This was supported by no other evidence; and was not of a character to compel the jury to believe, that it was a real and not a pretended and colorable agency; and if they believed the latter, then it would follow, that a delivery of the possession of the goods had not been made; and they should have found for the defendant. (Butler v. Stoddard, 7 Paige, 163; Burrill, 427, 430.)

The defendant also asked the court to charge the jury, that Hudnall's remaining in possession of the goods, and using them in payment of other debts than the one secured, was a badge of fraud; as likewise was the assignment of a large amount of property greater than the debt to be secured; also, that if he was a judgment debtor, that fact was a badge of fraud. These charges, as well as the one first adverted to, were all refused.

It is true, that the court is not allowed to charge upon the weight of evidence, but it may explain to the jury the reasons,

upon which it is admitted.   Why permit any of these facts to
be proved at all ?    It is because they tend to raise the presump-
tion of a fraudulent intent.    That presumption may be removed
by facts reasonably explaining and accounting for them consis-
tently with an honest intent.    The force of their tendency to
raise this presumption, and of the facts, if any be shown in
explanation, must be left to be weighed by the jury.

Possession by the assignor, when the deed is absolute, is gene-
rally held to be *primâ facie* evidence of fraud, which, if not ex-
plained away, makes the deed void, as to creditors, who are hin-
dered and delayed by it.   (Earle v. Thomas, 14 Texas Rep. 592.)
Any use of the property, not consistent with the objects of the
deed, would increase the force of this presumption, unless satis-
factorily explained.   An assignment of a much larger amount
of property, than what would be necessary to pay the debt, as
well as the fact of there being a judgment creditor, are badges
of fraud, and are admitted in evidence, as tending to establish
it in connection with other facts.    (Twyne's Case, 1 Smith's
Lead. Cas. 33.)

Courts cannot be expected or required, in all cases, to explain
in detail, in the charge given to the jury, the purposes for which
every piece of testimony has been admitted.   But in cases of
fraud, where the main issue is, usually, the intent with which the
deed is made, something more, than giving in substance a copy
of the statute of frauds, will often be necessary, to enable a
jury to determine a case, in accordance with the principles which
have governed chancellors, in adjudicating the facts connected
with assignments.   Under the restriction of our statute against
charging upon the weight of evidence (Hart. Dig. Art. 753), the
court may not be able to do more than explain, that the fact of
an assignor being a judgment creditor, or of his having assigned
an excessive amount of property, is admitted in evidence as tend-
ing to establish a fraudulent intent, and that its effect is to be
determined by them, in connection with any facts that may be
in the case, explaining them, and making their existence consistent
with the objects of the deed, and with fair dealing.    To charge

simply that they were badges of fraud, as asked in this case, without any reference to the fact, that they were subject to explanation, by the circumstances shown to exist, tending, in some degree, to rebut the presumption arising from them, may have misled the jury. So it was held, in the case of Earle v. Thomas, above cited, where the jury was told, that the possession of the vendor after the sale raised a presumption of fraud, and it was not sufficiently explained, in the same connection, that such presumption may be rebutted. (14 Texas Rep. 583.)

These are all matters of fact,—evidence tending to establish the fraudulent intent, but subject to be explained by any other fact that may be proved in the case, so as to break their force. And when the object of their admission is sought to be pointed out, in a charge asked, the accompanying proposition should be placed in the same connection,—that they are not in their nature conclusive, but subject to explanation by other facts, if they are shown to exist. These charges then, except the first, may have been objectionable in the form in which they were asked, with reference to the facts in evidence. But the first one, as to delivery of possession, was correct and appropriate, and should have been given. The greatest means of control, however, which courts have, in relation to this subject, are to be found in their power of granting a new trial, if the verdict should not properly respond to the facts of the case. When considered upon its facts, on a motion for a new trial, the badges of fraud present themselves in forcible array. The possession and unlimited control by the assignor, without any visible change in the possession or control; the appropriation of a portion of the property assigned, to be sold in satisfaction of his debt, and its diversion from the expressed objects of the deed, by the assignor; the large amount of property assigned to pay this one creditor; the subsequent suit by the assignee on the note, which this assignment proposed to secure and pay, and the matters connected with this suit; the fact that it is not shown that the debtor has other property, to satisfy in whole, or in part, his other debts; are strong circumstances, which can hardly be said

to have been explained away, by anything proved on the trial. It will suffice to say, on this part of the subject, that the case of Butler v. Stoddard, above cited (7 Paige, 165), presented facts, in the main, very similar to the one now under consideration, and the Chancellor (WALWORTH) did not hesitate to determine, in reversing the decree of the vice-chancellor, that the transaction was fraudulent as to creditors.

Another question in the case, arises upon the objections taken by the defendant below to the admission of Hudnall, the assignor, to testify in behalf of the assignee, against the sheriff, who sold the property. The objection was made on account of his interest; and no good reason is now seen, why he was not interested. If the sheriff was compelled to pay the value of the negroes, it would at once be appropriated towards the payment of the debt, secured by the assignment. If the sheriff successfully resisted the suit, he lost that much. For the sheriff, we must presume, (as he testified on the trial) had appropriated this money to the debt due to Burnside & Co. And so far as it appears, from the facts, this appropriation of it would enure to the benefit of Hudnall, in the payment of the debt of Burnside & Co.; even though he had to pay it again, by this suit, towards the debt of Holt.

It is not like the case of a vendor who has conveyed, with warranty expressed or implied, property, which is afterwards levied on, upon a trial of the right of property. In such case, there has been no appropriation of its value, in discharge of the execution against him, at the time he gives his testimony; and there can be but one appropriation of it, in any event, and so far as his pecuniary interest is concerned, it is immaterial to him, to which obligation it is finally appropriated. Hence his interest is said to be balanced. We think the objection was well taken. The judgment is reversed and cause remanded.

Reversed and remanded.