## John A. Green v. John B. Banks.

Causes for the trial of the right of property levied upon by executions, in favor of different plaintiffs, should not be consolidated.

It is not a correct practice to take from the claimant, a joint bond to the plaintiffs in both executions; though a liability in favor of each of several obligees may be created in the same bond.

Where the court has refused to dismiss the case on the motion of the plaintiff in execution, because the bond was joint, and the claimant has availed himself of it, by proceeding to try his right to the property, he cannot complain that the court refused to consolidate the two cases, and that judgment was rendered on the bond, in favor of the plaintiff singly, for ten per cent. on the amount of his debt.

The reservation, control and use of property stipulated for by the grantor, and other terms restrictive of, and onerous upon creditors, *may* be consistent with the objects of a deed, intended as a lien upon particular property, to pay certain debts, and not as a general assignment for creditors ; and are subject to explanation so as to make them appropriate terms in a *bonâ fide* transaction.

The validity of such a deed depends upon the intent with which it is made, and a creditor attacking it, may prove the amount of the debtor's property generally, where it was, its character, accessibility to creditors, and contemporaneous dispositions of it.

The defendant, (the trustee,) cannot object to such testimony as irrelevant, or because it is not shown that he or the accepting creditor knew of the existence of the other property.

A charge by the court, that the creditors under the assignment cannot be deprived of their rights under it, by any fraudulent acts of the debtor, committed after the assignment, unless consented to by them, restricts such testimony, so as to prevent any subsequent acts of the debtor, that were incidentally developed, from affecting the validity of the deed.

Where the presumption of acceptance by creditors is relied upon to give effect to a deed, that presumption must also extend to notice of the facts and circumstances under which it was made; and in such case, it is not error to refuse to instruct the jury that the fraudulent intent with which the deed may have been made by the debtor, would not affect the creditor, unless known to, or concurred in by him, or his agent.

Appeal from Travis.    Tried below before the Hon. Thomas H. Duval.

This was a suit to try the right of property to a slave levied on as the property of Wesley Smith, by virtue of an execution from the District Court of Travis county, in favor of the plaintiff, John B. Banks, and claimed by the defendant, John A. Green, under a deed conveying the said slave, together with certain other property, to him in trust for the creditors of Smith.

The said slave was also levied upon at the same time, by virtue of an execution from the District Court, against Smith, in favor of Henry Ross, and a like claim was interposed by the defendant, Green. And at the time of the trial of this cause, another cause between Ross and Green, for the trial of the right of property in the said slave, growing out of the said levy and claim, was also pending in said District Court.

There was a verdict and judgment in favor of the plaintiff, from which the defendant appealed. The facts are stated in the opinion.

*J. A. & R. Green*, for the appellant.—We will notice the grounds upon which the plaintiff relied to annul the deed of trust.

1st. The reservation by the grantor of benefits to himself; which were: 1. The possession and temporary use of the property. That such possession, when consistent with the deed, as in this case, and of things not consumable in the use, and for a reasonable time, is not fraudulent, we refer to 1 Texas Rep. 415; 4 Yerg. 541; 5 Humph. 496; and a time not exceeding the "law's delay," (for instance, one year,) is not unreasonable. (4 Yerg. 541; 8 Id. 140; 4 Humph. 237.) 2. The reversion of the surplus to the grantor. To which we reply, "that the clause in an assignment, directing the surplus, after paying the enumerated debts, to be paid to the grantor, is nothing more than a declaration of the effect which the law would give to the conveyance, is a perfectly plain truth; and in this case, where the parties have agreed that the whole amount assigned is insufficient to pay the preferred debts, the idea that the reservation of a surplus to the grantor will render the deed fraudulent, is a mere mistake." (Richards v. Levin, 16 Missouri Rep. 596, 599;

and see 1 Alabama Rep. 249; 5 Pick. 32; 8 Barb. 124; 7 Humph. 191, 192.) In this case, the deed on its face, shows a surplus of debts over assets assigned; and even after the refusal of Banks & Ross to accept, the evidence shows there will be no surplus, by several thousand dollars.

2d. Excluding all from the benefit of the deed, who will not accept it, or otherwise disregard it. This, again, is nothing more than the law does. The beneficiaries (not the trustees,) of a deed of assignment, must accept it, before it will operate as to such beneficiary. (2 Story, Eq., §1036; 3 Humph. 442.) But acceptance will be presumed, where the contrary does not appear. (Id.) As to the forfeiture declared against those attempting to enforce liens which may exist, it will suffice to say, that none such existed on behalf of any creditor. There is nothing in the deed requiring any creditor accepting its provisions, to relinquish any part of his debt, or any right which he legally had, as was the case in 11 Wend. 187. The attempt to levy on any of the property included in the deed of trust, would be a refusal to accept its terms.

3d. It is no objection, that the whole of the property of Smith was not assigned. (13 Sm. & Marsh. 22, 30.)

4th. The court erred in permitting evidence to go to the jury, concerning frauds of Smith subsequently committed with the trust property, and also other property. Such a ruling puts it in the power of the grantor, by subsequent fraud, to defeat any assignment, however valid and honest. (6 Barb. Rep. 91; and see 4 Yerg. 323, 325.)

5th. The court erred in charging that fraud intended by the grantor would vitiate the deed, though not participated in, or even known, by the grantee. This was the point upon which the case rested below; and the ruling of the court is contrary to all the law which we have been able to find. (Pierson v. Tom, 1 Texas Rep. 577; 10 Id. 393, 419; 13 Penn. St. Rep. 587; Choteau v. Sherman, 13 Sm. & Marsh. 385, 389; 9 Yerg. 325; 2 Dana, 324; 18 Wend. 353; 14 Alabama Rep. 559; 14 Missouri Rep. 16; 20 Ohio Rep. 389.) The cases above cited, as to the delay

which will be allowed by a deed of assignment to a preferred creditor, before sale of trust property, relate wholly to cases where a surplus will remain, in which other creditors are interested. In this case, no surplus can possibly remain. If the accepting creditor, who alone is interested, does not object, even five years has been adjudged not to be an unreasonable time. (Bennett v. Union Bank, 5 Humph. 612, 618.)

Again, as to the reservations in the deed, we call attention to the fact, that the homestead was gratuitously given up to his creditors by Smith; and, under the circumstances, it would not be fraudulent for him to reserve a sufficient sum for his support. (2 Johns. Ch. Rep. 565.)

*Haralson, Flournoy & Robards*, and *Shelly & Carrington*, for the appellee.

ROBERTS, J.—This is a suit to try the right of property to a certain slave, named Simon, valued at $1000, levied on, the 15th September, 1855, as the property of Smith, by virtue of an execution in favor of Banks, for $698.60, and $8.05 costs, issued upon a judgment rendered against Smith in favor of Banks, in Travis county District Court, on the 23d day of May, 1855, which slave was claimed by Green, by making oath, and giving claim-bond, the 24th September, 1855, by virtue of a deed to him executed, as trustee for the benefit of creditors, by Smith and others, on the 28th day of May, 1855. A verdict was returned, subjecting the property levied on, to the execution of plaintiff, Banks. A judgment to that effect was rendered, and also in favor of Banks against Green and his sureties, on his claim-bond, for $69.68, being ten per cent. upon the amount of Banks's execution.

The questions in the case are very much narrowed down by the fact, that the correctness of the verdict of the jury, on the facts, is not questioned under the rulings and charge of the court. The assignments of error relate exclusively to the rulings and charge of the court. They may be conveniently

considered under two heads; first, those relating to the mode of proceeding in the case, and the judgment thereon; and secondly, those relating to the admission of evidence on the trial, and the charges of the court, given and refused. Those under the first head, are as follows: "1st. The court erred in severing the case of Banks and Ross v. Green, in the two cases. 2d. The court erred in refusing to consolidate said case or cases. 3d. The court erred in rendering a separate judgment in favor of Banks, on a joint bond given to Ross and Banks. 4th. The court erred in rendering judgment (for) ten per cent. damages on the amount of Banks's execution. 5th. The judgment rendered, is not in accordance with the law or the statute."

It appears that the sheriff had, before the claim-bond was given, levied on the slave, by virtue of the execution of Ross against Smith, as well as of Banks v. Smith; and that the bond recited both, and the claim was made by Green, as against both. The cases were docketed separately, corresponding to the execution, Banks v. Green, and Ross v. Green. Green tendered an issue, setting up his claim to the slave, under the deed of trust. Banks joined issue, by denying that there was such a deed, by alleging that the slave was the property of Smith, and by averring that if there was such deed, that it was made coviously, &c., to hinder, delay, and defraud creditors, and was therefore, as to plaintiff, void. Afterwards, Green moved to consolidate the cases of Banks v. Green and Ross v. Green, to be tried as one case; which motion was overruled by the court. The plaintiff, Banks, moved the court to dismiss the claim, because the bond was payable to Banks and to Ross; being one bond only, given in the two cases. The court decided this motion in favor of Green, and against Banks, and retained the cause in court, and sustained the bond as sufficient for that purpose. When the jury returned their verdict in favor of the plaintiff, the court rendered a judgment in favor of Banks, for the ten per cent. damages, just as if the bond had been given singly to Banks. This judgment followed as a necessary consequence from the previous decisions in the case.

The ground upon which the claim-bond must have been sustained by the court under the statute was, that being given with a knowledge of, and a direct reference to, the several and separate interests of Banks and of Ross, it was intended by the parties giving it, to secure those several and separate interests; and that, considering the object of the bond, a joint liability to Banks and Ross could not have been contemplated. Under this view of the subject, Green was relieved from giving a bond in each case, and his claim was not dismissed. Under this view, the court refused to consolidate the two cases, and also rendered the judgment for damages in favor of Banks. This decision of the court, (upon which the others are dependant,) that the bond was sufficient, notwithstanding it embraced both cases, retained the claim in court, was favorable to Green, and he availed himself of it by proceeding to try his right to the property; and Banks, though excepting to it at the time, has not appealed from the judgment of the court upon it; nor has he assigned it as error, or otherwise complained of it.

If we should say, that the judgment rendered in favor of Banks singly, is erroneous, it would overturn that decision, of which Green availed himself, and of which Banks does not now complain, and from which he has not appealed. This would result in our dismissing the case, because the bond was made to Banks and Ross jointly, in form, when Banks has not appealed, or assigned it as error. If we should say, that the court should have consolidated the cases, it would subvert the only ground upon which we can suppose that decision could have been made, and give our sanction to the practice of consolidating in the same proceeding and trial, the causes of different plaintiffs in execution, whose executions happen to be levied on the same property. This we are not prepared to do.

We can imagine no state of facts, wherein it would have been within the power of the court, to have correctly rendered a joint judgment in favor of Banks and Ross, even if their cases had been consolidated and tried together. The one had no interest whatever, in the debt or damages of the other. If the bond

would secure them at all, it could only be, by allowing each one of them to recover separately what he might be entitled to under it.    The only advantage that the defendant could derive by the consolidation, would be, not in compelling them to take a joint judgment, but in possibly adjusting the amount of damages each should recover, so as to prevent both together from recovering more than ten per cent. upon the value of the property.    If he is entitled, under the law, to this benefit, upon a joint trial, we see no reason why, with proper diligence, he should be deprived of it, when the cases are tried separately.    The mere mode of trial cannot take away his legal right, if he have it.

In this point of view, it becomes a mere question of convenience in the remedy to one of the parties—the defendant.    The rights of the plaintiffs in execution can neither be changed, abridged, extended, nor conjoined, by the mode of trial.    So that if the bond be sufficient to secure them at all, it must secure their several and separate interests.    A liability in favor of each of several obligees may be created in the same bond.    There is nothing in the shape given to this bond, which would forbid this construction.    It does not treat them as partners or joint parties in interest, having the same execution.    The court, in arriving at its legal import, had a right to look to the executions of Banks and of Ross recited in it, and upon which it was founded, and the objects for which it was given, and the purposes it was intended to subserve.    And to render it effective, for any purpose for which it could be given, the court was compelled to regard it as designed to secure their separate and several interests.    In our practice, injunction bonds and appeal bonds embrace parties as obligees, who have no common interest, and the liability incurred to each, must depend upon the nature and extent of interest each has in the matter of litigation.    Still these bonds are intended to secure each and all, in their several interests.    So it was construed by the court in this case of a claim bond.    And under this construction, the judgment rendered in favor of Banks for his damages, may be sustained.    There was no issue formed, or facts in proof, showing the priority of lien

between the two executions, or otherwise enabling the court to adjust the proportion of damages to be recovered by each, if they are not entitled to recover damages at the rate of ten per cent. upon the whole amount of their executions.

While we do not think it a correct practice for the courts to sanction bonds thus taken, connecting and entangling the interests of parties in one suit, who have no common right, and whose rights in the prosecution of the suit, may stand upon wholly different grounds, and in whose favor there cannot be a joint judgment; still we are not prepared to hold in this case, that this bond is not sufficient to sustain this judgment for damages in favor of Banks. The defendant is not in a position to complain of the construction given to the bond by the court below, when it was only upon that very liberal intendment in its favor, that it could be sustained as a claim-bond in this case. Had Banks, against whom this liberal intendment was given, and whose interests were thereby entangled and complicated with others with whom he had no concern, appealed and assigned as error, this decision of the court, the question would have been fairly before us; and we would have been at liberty to indicate by our decision, the correct practice on the subject under our statute. (O. & W. Dig. 441-443.)

It is proper to remark, that though we have given this question our serious reflection, we have been aided by but little argument or authority.

The assignments of error under the second head, are: "6th. The court erred on the trial in permitting evidence to go to the jury, of fraudulent acts of Smith, done after the deed was executed. 7th. The court erred in permitting evidence to go to the jury, that Smith had committed other frauds with his property, not relating to the deed in controversy. 8th. The court erred in the charge to the jury. 9th. The court erred in refusing to charge, that to render an assignment for the benefit of creditors fraudulent, the fraud must be concurred in by the trustee or beneficiaries, as well as intended by the maker. 10th. The court erred in refusing the charge asked by defendant, that

to render such an assignment fraudulent, the creditor must have knowledge of the fraudulent intent of the grantor."

To decide upon these errors, it is important, in the first place, to understand the exact character of the deed executed by Smith to Green. It is of mixed character, partaking in part of an assignment absolute, and in part of an ordinary deed of trust upon particular property, creating a lien thereon.

The notes and accounts contained in the schedule, were assigned absolutely; the land and negroes were conveyed in trust to secure certain debts, and to be sold at a particular time by the trustee, if the debts were not sooner paid.

The deed conveys to the trustee, lots, (including Smith's homestead, estimated on the trial to be worth from $2000 to $3000,) negroes, notes and accounts, all shown on the trial to be worth about $8000 or $9000. It recites that Smith & Strayhorn, and their predecessors, Williamson & Co., of whom Smith was one of the company, are largely indebted, and then sets out certain debts, being notes and judgments, amounting to about $12,000. The judgments were, one in favor of Banks for about $700, and one in favor of Ross for (as stated in the deed,) about $400, both of which had just been rendered in the District Court of Travis county, which was shown to be still in session. It then recites that, whereas said Smith & Strayhorn are *desirous of securing the above-named debts* for the benefit of parties therein named, and desiring time to enable them to make the property available at the best price possible, they stipulate that they shall have the privilege of selling the land and slaves at private sale, with the consent of the trustee, and of retaining part of the real estate eighteen months, and the negroes twelve months. The notes and accounts valued on the trial at about $2000, were to be immediately delivered to Green. It was further stipulated, that should Smith & Strayhorn fail to sell the lots within eighteen months, (a minimum price was stated,) and the negroes within twelve months, "*and also fail to pay the debts herein mentioned,*" then the said

Green is authorized to sell the property, and apply the proceeds to the said debts, &c.

The deed does not profess to convey all of Smith's property, or to secure all of his debts, nor is it stated that he was insolvent or in failing circumstances. It was stipulated, that the proceeds of the property should be appropriated *pro rata,* to such of these creditors as should accept the deed, and that if any of these creditors should enforce any judgment lien upon any of the trust property, or should fail to accept and endeavor to set aside the deed, they should be excluded from the benefits of it entirely. Banks, being a judgment creditor at the time of the execution of the deed, had his option to levy upon other property, if he could find it, to accept the provisions of the deed and get his *pro rata,* to take steps to secure to himself any balance in the hands of the trustee, after paying the rest (upon the view that the deed was valid,) without accepting the deed, or to levy upon the trust property, and attack the deed as fraudulent and void as to him. He chose the last alternative.

The deed, as to most of the property, being a mere lien upon particular property to pay certain debts, and not a general assignment for the benefit of creditors, the reservations, and control, and use of the property, as stipulated for by the grantors, and the other terms of the deed, restrictive of, and onerous upon creditors, might be consistent with the objects of the deed, and were subject to explanation, so as to make them all appropriate terms in a fair *bonâ fide* transaction. Its validity depended upon the intent with which it was made. It was important to Banks, therefore, in order to exhibit that intent, to develop, in connexion with the terms of the deed, all the facts and circumstances showing the amount of Smith's property generally, its character and locality, and his contemporaneous acts in connexion with this disposition of a part of his property. If, for instance, he, at the date of the deed, had plenty of other property, readily accessible to a judgment creditor, seeking at once to make his money, and he had been fully able, with ostensible means, to pay all his debts, and had a good estate besides,

then the terms of this deed might not excite any suspicion of a fraudulent intent. If, however, Banks could show that he was in failing circumstances, and had but little ostensible means, except this property, and that, from its character and locality, not readily accessible to his execution; that judgments for a considerable amount had just been rendered, to satisfy which his visible property would be liable to be taken; that at the time of making the deed he disposed of his remaining stock of goods, and by this deed sought to put beyond the reach of his execution, the portion of his property that was accessible, then the terms of the deed might become very significant of a device to hinder and delay pressing judgment creditors, until his own convenience and interest might suggest the propriety of selling his property himself.

For the purpose of showing the amount and species of property owned by Smith, at the date of the deed, Banks proved that about the time of the levy of his execution, Smith had acknowledged before a notary public, a bill of sale of wagons, oxen, horses, hogs, and cattle, (said by one of the witnesses to be certainly worth seven hundred dollars,) to his mother-in-law, Mrs. Davis, and endeavored to prove that Smith had this property, some at one place and some at another, at the time of sale. He also proved, that Smith & Strayhorn had a small lot of goods, valued at $200 or $300, but exact value not known, which he sold to Groesbeck at the time the deed was executed; also, that he shortly afterwards put out for collection, notes and accounts (amount not stated) which were generally better than those included in the deed of trust; also, that a debtor of Smith afterwards paid him his debt, not included in the deed, amounting to $40. To all this, and the like testimony, the defendant objected, upon the same ground. The first objection will show the object of the evidence and the nature of the objection. " In regard to the testimony of this witness, in relation to the retaining by Smith of the property mentioned in the deed to Mrs. Davis, or any other property than that in the assignment, the defendant objects to its reception, because

it was irrelevant, and because it was not shown that the principal accepting creditor, Groesbeck, nor the trustee, knew of the existence of said property; which objection was overruled." It was certainly proper to prove what other property Smith had, and where it was, its kind, and accessibility at the time the deed was made, and also any contemporaneous disposition of a part of it to one of the creditors, Groesbeck; and the manner of bringing out the testimony, and the manner of making the objection, shows this to have been the object. And lest the statement of the witness, in relation to Smith's having acknowledged a bill of sale before him of certain property to his mother-in-law, Mrs. Davis, might have an improper influence upon the minds of the jury, the court, at the instance of the defendant, instructed them, "that the creditors under the assignment, cannot be deprived of their rights to it, by any fraudulent acts of Smith, committed since the assignment, unless they consented to such fraudulent acts." This testimony, then, was properly admitted, and was so restricted by the charge of the court as to prevent any subsequent fraudulent acts of Smith, that were incidentally developed, from affecting the validity of the deed.

The court charged the jury that, "in determining whether the assignment in this case is fraudulent or not, you are to look alone to the *intent* of the parties; and the question as to whether there was or was not a fraudulent intent in making the deed, is one purely of fact; and the jury are the judges of the weight and amount of evidence necessary to establish and sustain it. It is for the jury to determine from the facts and circumstances developed, by the testimony in this cause, as well as from the general character, terms, and provisions of the deed of assignment itself, whether the intention of the parties was fair and *bonâ fide*, at the time of making the same, or whether it was fraudulent." The court quoted and explained the section of the statute of frauds applicable to the case, in a manner not unfavorable to the defendant. Considering the character of the deed, and the facts in proof, the charge presented the true issue to the

jury. (Howerton v. Holt, 23 Texas Rep. 51; Baldwin v. Peet, Sims & Co., 22 Id. 708.)

All the charges asked by the defendant were given, except those relating to the participation in the fraudulent intent by the trustee, or creditors, who were the beneficiaries of the trust. The action of the court on this subject, may be exhibited by inserting one of the charges asked and the qualified refusal by the judge, as follows, viz.: "7th. That a debtor having a right to prefer one creditor to another, an assignment to a creditor or to a trustee for his benefit, will not be fraudulent, unless the fraud is concurred in by both parties to the assignment, and the secret intentions of the debtor making the assignment, to defraud or delay his creditors, will not deprive the creditor who has obtained the assignment, of the advantage of it, unless such creditor, or his agent, knew of, and concurred in such intent to defraud." "So much of the 7th instruction as makes it necessary for the fraud to be concurred in by both parties, is refused."

In considering this action of the court, it is necessary to understand that the deed does not purport to be accepted by any of the creditors, and there is no direct evidence that any of them had accepted it. The only evidence on the subject was, that one of them, Groesbeck, was present, and assisting in the negotiation, when the deed was executed. Their acceptance then was matter of presumption. This question was considered, in the above-cited case of Baldwin v. Peet, Sims & Co. It was there said, "that part of the charge which made it immaterial whether the trustee knew the fraudulent intent of the assignor or not, does not appear to be objectionable in this case. The American decisions hold, that the assent of creditors to a general assignment will be presumed, so as to give it effect, although they may know nothing of it when it is made. (4 Johns. Ch. 522, 529, 531; 11 Wendell, 240; 8 Robinson, Rep. 262; 16 Ala. Rep. 560.) While its validity rests upon a presumed fact, it is but fair that the presumption of assent should extend to the whole transaction; otherwise, by the legal presumption, a fraud

might be aided in its perpetration. Hence it has been held, when an assignment in trust was made with a fraudulent intent, unknown to the trustee, the assent of the creditors would not be presumed." (Townsend v. Harwell, 18 Ala. Rep. 301; Burrill, 311.) So if the same presumption of acceptance by creditors, be indulged in favor of this deed to support it, the presumption should also extend to notice of the facts and circumstances under which it was made, as well as to the terms of the deed. For this reason the court did not err in refusing the charges as asked by the defendant, on this subject.

The assignments of error presenting no other questions, and the merits of the case upon the facts not being before us, no other question will be discussed. Judgment of the District Court will be affirmed.

Judgment affirmed.