## No. 11,082.

### S. W. RAWLINS VS. PRATT, SHERIFF, ET AL.

### MUTUAL NATIONAL BANK VS. SAME.

### SMITH & BOULEMET VS. SAME.

### CHAFFE, POWELL & WEST VS. SAME.

#### CONSOLIDATED.

Where an attack is made upon certain proceedings in attachment and the judgment therein rendered, upon the ground of combination, collusion and fraud between the attaching creditor, the debtor and the debtor's attorney, in order to give the attaching creditor an illegal preference, and the evidence shows that the latter's rights and priority are not dependent upon the acts complained of b it should stand and be valid independently of them, the attack must fall.

Rawlins et als. vs. Sheriff et al.

A PPEAL from the Second District Court, Parish of Webster. *Richardson, Judge ad hoc.*

*Boatner & Lamkin* for Plaintiffs and Appellants.

*L. K. Watkins* for Third Opponents and Appellees:

1. The Code of Practice provides for the attachment of property when the debtor has or is about to commit some of the fraudulent acts laid in the statute. C. P. 241, 242, 246, *et seq.*
   The attachment does not divest the debtor of his property or the right to mortgage or dispose of it subject to the attachment and the privilege arising therefrom. Drake on Attachments, Sec. 222, Sixth Edition; see also authorities, Sec. 2 of Syllabus.
2. Hence, subsequent writs may issue and same property be attached in several cases. 41 An. 116; 43 An. 851, 856; 40 An. 203; 35 An. 285; H. D., Vol. 1, p. 149, No. 14; Drake on Attachments, 221, 231, 260, 261.
3. If writs are not dissolved the creditors have a privilege on the property, ranking in the order of their attachment, and the property attached " shall be subject to satisfy such judgment as may be rendered against defendant." C. P. 264, 265, 722, 723; 3 La. 183: 7 An. 1; 6 An. 112, 768; 10 An. 431; 11 An. 710; 8 M. 395, 511; 15 An. 22; 22 An. 523; 35 An. 285; 41 An. 116; Drake on Attachments, Sec. 221.
4. The state of facts existing at the date of the issuance of the attachment determines the right to the writ, and the rights of attaching creditors. H. D., Vol. 1, pp. 136, 148; 32 An. 348; 35 An. 285; 41 An. 227; 1 An. 98; 10 An. 324; 43 An. 1062.
5. An opposing creditor, himself an attaching creditor, is estoppad from alleging that the common defendant attached was not properly subject to attachment. He can make attack on subsequent attaching creditors' privilege solely on the ground of collusion and fraud.
6. Alleging fraud " carries the burden of proving it." C. C. 1848; 39 An. 754; 34 An. 310.
7. It takes the consent of both contracting parties to make a contract fraudulent, or otherwise, and under the revocatory action will not be annulled unless the seller and purchaser are both in fraud, and there proves a resulting injury. 43 An. 888, 894; Lowenstine & Levy et al. vs. Fudikar, 40 An. 327; 31 An. 196.
8. Circumstances, even where indicating fraud, do not prove it. 35 An. 339, Ferguson vs. Chastant, and 43 An. 856, Tatum vs. Colvin. Circumstances explained, and opposed by positive evidence, prove nothing in a case.
9. The circumstance of an insolvent confessing judgment, consenting a mortgage, accepting service on an attachment suit filed by a brother-in-law, have each and all been held as not proving fraud. 26 An. 641, Wilson vs. Chaleron; 43 An. 856, Tatum vs. Colvin; 35 An. 339, Ferguson vs. Chastant. The filing of an answer of emphatic denials after ten days' citation by the defendant in person, putting the plaintiff on his proof of charges, can not defeat the rights of the attaching creditor under a writ levied eighteen days anterior.
10. Attorneys at law are only bound by special employment, and not prohibited from taking suits against former clients—allowed varying employment, the knowledge of the attorney as agent has been held not the knowledge of his client. 37 An. 754, Templeman us. Hamilton.

11. Answers to facts and articles must be taken as a whole. They can not be divided against the party interrogated. And when received in evidence without objection, the court is bound to give full effect to the answers. 18 An. 318, Cull vs. Herwig. A motion to take for confessed after trial begun and after filing of interrogatories in evidence can not be considered.

12. Motion in this case to have interrogatories taken for confessed (T. 50) is "on the ground that he has failed to produce the letters and telegrams he was ordered to produce;" explained fully in answer to motion (T. 51), as permitted under C. P. 140, et seq., and 473; 18 An. 203, 303; 30 An. 825, 827, 514, and 43 An. 1062, Chaffe, Powell & West vs. Mackenzie.

13. Interrogatories on facts and articles can not be used as a means of obtaining books and papers, provided for in C. P. 140, et seq., and 473; see bill of exception T.

14 "Answers given make full proof until rebutted; to destroy them the proof must be positive and certain, and can be overthrown only by the testimony of two witnesses, or that of one corroborated by strong circumstantial evidence, or by written proof." H. D., Vol. 1, p. 568, No. 3; C. P. 354; 1 N. S. 648; 2 L. 538; 12 R. 526; 4 An. 349; 26 An. 693; 19 An. 470; 5 An. 406. In this case no proof to contradict is offered.

15. Plaintiff has the right to rebut evidence offered by defendant. C. P. 477.

The opinion of the court was delivered by

NICHOLLS, C. J.    On the 24th of April, 1891, Chaffe, Powell & West, a commercial firm in New Orleans, instituted in the District Court for Webster parish a personal action (No. 1098 of the docket of that court) against one M. M. S. Mackenzie for a large amount of money, accompanying their demand by an application for a writ of attachment on charges of fraud, insolvency, etc.

The writ was granted and property of the defendant seized.

On trial in the District Court judgment was rendered in favor of the plaintiffs for the amount of their claim, but the attachment was dissolved and plaintiffs condemned to pay defendant $30,000 damages for a wrongful attachment. The plaintiffs appealed, and this court in a judgment rendered in the matter at Shreveport on the 23d October, 1891, amended the judgment so as to allow the defendant only $5150 damages and affirmed it in all other respects. On the 24th of October, 1891, S. W. Rawlins, the Mutual National Bank and Smith & Boulemet, creditors of the defendant, each brought suit against him on moneyed claims, accompanying their demands with applications for writs of attachment, which being granted, the sheriff seized under them the same property which had been attached by Chaffe, Powell & West. These three cases went to judgment on the *10th of November, 1891*; judgment being rendered in each in favor of the plaintiff

therein against the defendant for the amount claimed with recognition of the rights, of privilege resulting from the attachment. In the meantime Chaffe, Powell & West caused execution to issue under their judgment, and the property which had been held under their attachment was again seized on the 26th day of October, 1891, under their writ of *fi. fa.*

On the 11th day of November, 1891, S. W. Rawlins, the Mutual National Bank and Smith & Boulemet filed third oppositions in the case of Chaffe, Powell & West vs. M. M. S. Mackenzie, No. 1098, in which, alleging their judgments and their attachments and their priority by reason thereof over the plaintiffs in that suit, prayed that they be paid by preference out of the proceeds of the property seized. The defendants—the seizing creditors—met these attacks by answers, in each case substantially alike, in which they first pleaded the general issue and then averred that the attachments and judgments confirming same, on which third opponents rely, were fraudulently and collusively obtained and sustained by consent of defendant. Mackenzie, he being insolvent, with intent to defraud respondent. and confer an illegal preference on third opponents on the property of Mackenzie—wherefore they prayed that their demand be rejected. at their cost and for general relief.

Thinking that as defendants in these third oppositions they were occupying a more restricted position than they were entitled to hold, Chaffe, Powell & West then brought a direct action against Rawlins, the Mutual National Bank and Smith & Boulemet.

In their petition, after alleging themselves to be creditors of Mackenzie under the judgment already referred to as having been passed on by the Supreme Court, and that under a writ of *fi. fa.* issued thereunder at their instance a large amount of defendant's property had been seized, they refer to the suits and attachments sued out by Rawlins, the Mutual National Bank and Smith & Boulemet, and say that on the 10th of November, 1891, the day on which the aforesaid cases were ripe for default, the defendant appeared in person and pleaded answers of general issue and praying that the attachment be set aside.

That the several cases were at once taken up for trial, and defendant making no appearance, offering no evidence and interposing no objections, judgments were entered *pro forma* for plaintiffs, sustaining the attachments on the aforesaid property and ordering the same sold in satisfaction thereof.

That the aforesaid proceedings were fraudulent and collusive and gotten up for the purpose of conferring an unjust and illegal preference for said creditors of defendant over them and to defeat the execution of their judgment on his property, then not executory, but which they knew would become executory, and upon which a writ of *fi. fa.* would be issued on the 26th of the same month.

That the institution of said suits and issuance of said attachments was by a preconcerted scheme between the said creditors and Mackenzie to defeat petitioner's rights and confer a preference upon them. That Mackenzie is insolvent, and if the aforesaid attachments are maintained as valid liens on the property aforesaid there will be no other property upon which they could recover, and that the said property is insufficient to pay the writ which they have levied upon it. That they have acquired a lien and privilege upon the said property by the levy of the writ of *fi. fa.* aforesaid. That in order to protect their rights and avail themselves of the benefit of their seizure it is necessary that the said fraudulent and collusive judgments, so far as they recognize and sustain said attachments and liens on said property, should be set aside and annulled.

They, therefore (describing each of said judgments), prayed that the judgment in favor of S. W. Rawlins against Mackenzie—that of the Mutual National Bank against him (one of the notes on which the latter judgment was obtained not being due until May, 1892), and that of Smith and Boulemet against him be amended and avoided in so far as they maintain the attachments therein issued and levied upon the property seized under petitioner's writ of *fi. fa.* against Mackenzie. Mackenzie was made a party defendant to this action.

The three judgment creditors thus made defendants answered by first pleading the general issue; they next averred that Chaffe, Powell & West by their judicial admissions, judicial allegations, proof adduced and sworn testimony of themselves in their case, No. 1098, in the Second District Court for Webster parish vs. M. M. S. Mackenzie, have estopped themselves from bringing the action herein. They alleged that the petition of plaintiff in this case disclosed no cause of action. They further alleged that the attachments herein attacked were levied and sued out in good faith by the plaintiffs therein severally on just legal grounds for attachment without any collusion, without privity of interest, without fraud and without any under-

standing or concert of action between themselves severally or with Mackenzie, and that by virtue of said attachments in the suits alleged and the judgments therein they have severally obtained the rights and privileges of attaching creditors allowed by law, and the judgments granted against the property and its proceeds alleged by the plaintiff and fully shown by the judgments and records in the suits herein sought to be annulled by reference hereto annexed, are higher in rank than plaintiffs' herein and said judgments are *res judicata*. They further alleged that the plaintiff has no privilege on the property and proceeds attached as alleged. That their judgment was an ordinary judgment, conferring no privilege against the property of Mackenzie, and the writ of *fi. fa.* was not issued and not in the hands of the sheriff when defendants' writs of attachment were severally issued and levied on said property. They therefore prayed that the suit and action to annul brought by plaintiff be rejected.

This direct action—the suit No. 1098 and the third oppositions were consolidated and tried together.

Chaffe, Powell & West (who for purposes of designation we will style the plaintiffs) do not directly attack the correctness of the claims of the third opponents against Mackenzie, nor dispute the verity of the facts upon which the attachments are based. They contend that the proceedings themselves and the judgments therein rendered were collusive and fraudulent—the result of a preconcerted scheme between those creditors and MacKenzie, gotten up for the purpose of conferring an unjust and illegal preference on them and of defeating them of their rights under the execution of their judgment. They claim that Messrs. Watkins & Watkins, who were *Mackenzie's* attorneys in his suit, were, shortly after being retained by Mackenzie, employed by Rawlins, who placed in their hands the claim upon which they subsequently sued out the attachment on behalf of Rawlins mentioned in the pleadings; that the defence made in the original attachment suit (No. 1098) was made by those attorneys as part of the preconcerted plan; that one of the members of the law firm was present at Shreveport watching the issues of the case on appeal, and that he early on the morning of the 24th November, 1891, telegraphed his brother and partner the conclusions reached the night before by this court; that thereupon the latter caused attachments at once to issue on behalf of the three third op-

ponents upon pleadings prepared by anticipation to meet the precise contingency; that Mackenzie, both before and after the judgment of this court on the said appeal, had warned a number of his creditors (notably the three opponents) to be on the alert for quick action, and had urged upon them to place their respective claims in the hands of Watkins & Watkins; that the three opponents had acted on this suggestion; that on the day the suits brought by them were ripe for judgments for default, Mackenzie, instead of actively contesting or delaying them, had gone forward and advanced the cases by placing them at issue by a simple geneıal denial, thus enabling the plaintiffs to take them up and dispose of them at once; that all these parties knew that plaintiffs' judgment would not be executory until after the legal delays for a rehearing had expired, and that execution would issue thereon on the 26th of November, and they thought to fore-stall this action by these collusive attachments; that in the original suit of plaintiffs against Mackenzie an intervention was filed in the name of Rawlins, in which it was charged that plaintiffs' attachment of Mackenzie's property was a collusive attachment taken out in fraud of Rawlins; that although the petition of intervention was signed by A. J. Murff as intervenors' counsel, the latter had no communication with Rawlins, but had been employed by Messrs. Watkins & Watkins, and that the defence of the suit and the intervention were part and parcel of the general plan which had been devised to defeat plaintiffs of their rights.

A great deal of testimony was adduced on the trial and an immense record has been brought up.

The judgment of the court below was against Chaffe, Powell & West and in favor of the defendants in the direct action for nullity of judgments and dissolution of attachment, and in favor of the third opponents on their oppositions, recognizing their priority over the seizing creditor upon the proceeds of the property and ordering them to be paid accordingly. The seizing creditors (Chaffe, Powell & West) have appealed.

We have examined very carefully the evidence in the record, and we find no act done which made it necessary to have the concurrence of either Mackenzie or the Messrs. Watkins in order to bring about the precise condition of affairs presently existing.

The attachment suit of the plaintiffs against Mackenzie was public, and the proceedings taken in it were open to inspection by every one.

The amount of the seizure therein was so large as to necessarily carry with it, if maintained, as the plaintiffs themselves say, the loss of any claim other than their own. The attention of every creditor of Mackenzie was drawn to that seizure, and its progress was watched beyond question with great interest. Rawlins, one of the third opponents, who it appears was a director of the Mutual National Bank, was one of those creditors. He was at Minden just after the attachment, and was not only fully advised but alive to the necessity of protecting his interests. To that end he called upon Messrs. Watkins & Watkins, his regular attorneys, and sought to retain them, but was answered that they were McKenzie's attorneys in the pending suit and could take no employment inconsistent with their duty to him in that suit. They finally consented to represent Rawlins when their relations with Mackenzie should have terminated. We have no reason to believe that they by reason of that fact failed in any way in their duty to Mackenzie.

On the contrary the very vigorous defence made in his suit resulting in a dissolution of the attachment and a judgment in the District Court for $30,000 against the plaintiffs on defendant's reconventional demand for damages, and which judgment necessitated an appeal to this court, proves conclusively that Mackenzie's interests were not neglected. On the morning after this court had rendered its decree in that case, Rawlins, who was in the city of New Orleans, saw an announcement of the result in the morning papers. He at once advised the officers of the bank, of which he was a director (which bank was also a creditor), and dispatches were at once sent out by both to the Messrs. Watkins to take steps to protect their interests. Steps were immediately taken in the shape of attachments against Mackenzie, under which the same property which had been attached by plaintiffs was placed under seizure. These attachments were issued on the 24th of October, 1891, the day after the decison of the Supreme Court in the plaintiffs' suit. The petitions in those cases and in a similar proceeding brought on the same day by the firm of Smith & Boulemet, one of the three third opponents, were personally served on the same day on Mackenzie.

The District Court for Webster parish convened on the 9th of November at its regular session. At that time the delays for answering in the last attachment suits had expired, but no default under the law could be taken on the first day of the term. The next day

Mackenzie filed his answers pleading a general denial. The cases were at once taken up and disposed of and judgments rendered in favor of the plaintiffs in those suits, as has already been mentioned.

The plaintiffs in their brief, comment very severely upon the course taken by those plaintiffs and their attorneys. If (say they) those parties had just reason to issue attachments against Mackenzie, how comes it they delayed moving until after the decision of this court; why did they not move before? The answer to this is very obvious. It would have been exceedingly unwise on the part of those creditors, who owed no duty to the plaintiffs, to take any action in the face of plaintiffs' attachment covering nearly the whole of Mackenzie's property. Their only hope was to take advantage, as they had a perfectly legal right to do, of any opportunity which might present itself to throw forward their claims. The opportunity did present itself and they availed themselves of it legally.

The plaintiffs complain of the fact that one of the Messrs. Watkins should have been at Shreveport whilst the other remained at Minden, and that pleadings for attachment should have been prepared ready to be served at once on advices from Shreveport, and they further complain of those proceedings having been taken whilst their case was held up by reason of the fact that the delays for rehearing had not expired. Plaintiffs' rights were not at all affected by the fact that the Messrs. Watkins were attorneys in the case. Any other vigilant attorneys would have followed the identical course without the possibility of legal objection from the plaintiffs, and as we have seen as a matter of fact the firm of Watkins & Watkins at Minden were directed by dispatches from New Orleans on the 24th of October, to proceed.

The plaintiffs themselves could have anticipated the possible result of their suit and prepared accordingly, just as the third opponents did. They were not forced to wait the issuing of a *fi. fa.*; They could themselves have had issued new writs of attachment based upon facts which occurred subsequently to their original attachment.

We see nothing in plaintiffs' complaint that Mackenzie filed answers in the attachment suits, and by placing them at issue they enabled judgments to be taken at that term of court. The judgments were taken on the second day of a regular term of court, and if court adjourned on the third day, as it did, there is no reason to believe it would have adjourned so quickly had there been any suits

before it requiring a delay of a few days to terminate them. It would have been the duty of the judge to have held the court open a reasonable time, but the answer to this objection is found in the fact that the rights of these parties are not dependent upon the judgments, but upon the attachments. The right of priority of payment, which is the matter with which plaintiffs are alone concerned, springs from their attachments, which take rank from their date, and the suits themselves might have been left open for months without affecting the legal situation. 43 An. 856, Tatum vs. Colvin. We may assume for the purposes of this suit that Mackenzie, both before and after the decision of this court, may have written to his creditors, and among them to the third opponents, advising them of the situation and urging them to protect themselves and suggesting to them to send their claims to Messrs. Watkins & Watkins, and that on the strength of the information so derived the third opponents acted. If they had legal claims against Mackenzie, and the condition of facts justified attachments, they were entitled to proceed and were not prejudiced by the mere circumstance that their information came from their debtor. If they could have legally proceeded on information derived from a third person, the mere fact that Mackenzie, over whose actions they had no control, seeing ruin before him under any and all circumstances, and doubtless embittered against the plaintiffs whom he regarded as the cause of his ruin, should have written them, can not diminish their legal rights.

But the assumption we have made is not true, for, as we have seen, Rawlins acted on the strength of what he saw in the newspapers, the bank acted at the instance of Rawlins, and though Smith & Boullemet were put on their guard by Mackenzie, they say they intended acting anyhow, and intended sending their claim to Messrs. Watkins & Watkins, their regular attorneys for Webster parish.

We are not called upon to express any opinion upon the relations between Messrs. Watkins & Watkins and Mackenzie as resulting from the fact that they acted adversely to him immediately upon the termination of their relations in plaintiffs' suit.

In view of the condition of his affairs, we think it quite likely he was indifferent as to who the attorney in the case might be.

The three opponents, and Mackenzie and the Messrs. Watkins, deny positively, under oath, any combination, collusion or fraud. The plaintiffs have had ample opportunity to test all the facts in the

case in a direct action; the judgment of the lower court was against them, and we see no reason to reach a conclusion different from that reached by the district judge. It is therefore ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed.

### On Application for Rehearing.

FENNER, J. Impressed by the strong sense of injustice resulting from our decision evinced in the respectful but earnest brief of the applicant for rehearing, we have re-examined these cases in their every detail, with the most scrupulous care.

The salient points urged are:

1. That the attachments were levied at a time when appellants' hands were tied by the pending suit before this court.

2. That the apprehension of fraudulent disposition of the property attached by Mackenzie, which was the basis of the attachment, was unfounded, because the property was then under seizure in the hands of the sheriff.

3. That the attachments were fraudulent and collusive.

As to the first point it is true that appellants had attached the property of their debtor, that a trial of the case in the lower court had resulted in a judgment dissolving their attachment, and in a further judgment against them in favor of their debtor for damages exceeding the entire amount of their claim against their debtor, and that the necessary result of this judgment was to tie their hands until, by appeal, they could either reinstate their attachment, or, at least, reduce the judgment in reconvention so as to leave them still creditors of Mackenzie, which latter relief alone they subsequently obtained.

This state of facts certainly operated a great misfortune to appellants; but we have sought in vain for any principle of law which would justify us, on account thereof, in denying to other creditors their legal right to prosecute their claims and to avail themselves of all legal remedies to enforce them.

The second point is equally and obviously without legal force as a bar to the right of attachment by other creditors. It has never been held, so far as we are aware, that the attachment and taking into the hands of the sheriff of the debtor's goods by one creditor prevented other creditors from attaching the same goods.

Rawlins et als. vs. Sheriff et al.

It presents the common case of successive attachments of the same property, in which, if the first attachment is set aside, the second succeeds to priority of privilege.

Appellees, therefore, had the legal right to attach the property at the time and in the manner in which they did if they had the grounds for so doing prescribed by law. All questions as to the intrinsic merits of their attachments are concluded by the judgments rendered in the cases, which are final and have not been appealed from, and which exhibit, on the face of the records brought before us, no nullity or irregularity in the proceedings. These judgments, as well as the judgment rendered by this court in appellants' own suit against Mackenzie, are not within our power of review on the mere merits thereof in the present proceedings. Appellants' relief, therefore, must rest exclusively on the third point above stated.

They invoke the nullity of the attachments and judgments on the ground of fraud and collusion.

On this subject we recently said: "Fraud is never presumed. While courts recognize the cunning concealment in which it shrouds its devious practices and the difficulty of tracing it by direct proof, and therefore give due weight to all circumstances indicating its existence, yet such circumstances must be of a character to convince the mind clearly before they can support a conviction of such an offence, almost akin to crime." Calhoun vs. McKnight, 44 An. 399.

In another case, involving a question of fraudulent conveyance, we said: "It may be unfortunate for plaintiffs that they had no means of proving the knowledge of the vendee except by putting the parties themselves on the stand. They have made the parties their own witnesses. These have unequivocally sworn that the son did not know of his father's insolvency, and there is nothing to contradict them. Plaintiffs have no alternative but to abide the result." Newman vs. Mahoney, 44 An. 423.

The same is true here. Appellants propounded interrogatories on facts and articles to their adversaries and their answers negative all fraud or collusion. These answers have not been successfully contradicted, nor is any circumstance proved in the case inconsistent with their truth. It may be that Mackenzie, in his animosity against appellants, looked with complacency upon the proceedings of appellees and was disposed to favor them, but this does not establish either fraud or collusion as against the latter. They could

Rawlins et als. vs. Sheriff et al.

not be prevented from exercising their legal rights because defend-
ant chose not to oppose them.   The course taken by the appellees
was the one obviously suggested under the circumstances, which
were well known to them in the protection of their interests as
creditors.

Nothing in the case awakens a doubt in our minds that they would
have pursued the same course, whether their debtor favored or op-
posed it; and if the attorneys, whom they had employed, had de-
clined the case, they would certainly have employed others who
would have taken the same proceedings.   Nothing prevented those
attorneys from acting for the creditors except their supposed duty
to Mackenzie, and if the latter does not complain no one else has the
right to do so.   Certainly the creditors can not be prejudiced in
their legal rights.   If the attorneys felt themselves free to act, the
creditors had the right to employ them.

This whole subject was very fully considered in a case recently
decided by the Supreme Court of Texas, and the conclusions there
reached more than sustain our rulings.   Goodbar vs. City National
Bank, 78 Texas, 461.

It was there in substance held that if the debt claimed was just,
and grounds for attachment existed, and the real motive of the at-
tachment was to collect the debt, and not merely to aid the defend-
ant in placing the property beyond the reach of other creditors, even
the consent of the debtor would not invalidate the attachment.

We do not and need not go so far.   In this case, the consent of the
debtor was neither asked or required.   The necessity of the action
taken at the time when it was taken, and the fatal effect of delay,
were apparent to the creditors.   If they had not attached before
appellants' judgment became executory, it was obvious that the
seizure of the goods under *fi. fa.* would destroy all hope of collecting
their claims.   What need of searching for any unlawful motive?
The law gave them the right to attach and to secure the consequent
preference over appellants; and the " hard case " of appellants can
not justify us in relieving it by making " bad law."

Rehearing refused.